

# MARSH
## law firm pllc

31 Hudson Yards, 11th Floor
New York, NY 10001
315-296-9046 ● MargaretMabie@marsh.law

March 20, 2026

Tammi M. Hellwig, Clerk of Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**VIA ECF Only**

**Re:    *M.T. v. Backpage et.al, 20-cv-6734 (JGK) – Response to Defendant Lacey's Notice Of Supplemental Authority***

Dear Clerk,

Pursuant to Hon. Koeltl's individual practice rules, I, Margaret E. Mabie, on behalf of Plaintiff, Melanie Thompson, write this letter in response to Defendant Lacey's March 19, 2026, notice of supplemental authority arising out of the Northern District of Illinois, issued in *G.G. v. Salesforce.com, Inc.,* N.D. Ill. Docket No. 20 C 2335.

Defendant Lacey's reliance on this additional decision from the Northern District of Illinois is misplaced because out-of-district district court opinions are not binding on the Southern District of New York. This Court must conduct an independent analysis guided by the text of the statutes, Supreme Court precedent, and Second Circuit authority; decisions from other district courts are, at most, persuasive and do not constrain this Court's exercise of judgment. See *Dish Network Corp. v. Ace American Insurance Co.*, 431 F. Supp. 3d 415, 425 (S.D.N.Y. 2019) ("binding precedent [is] set only by the Supreme Court and the Court of Appeals for that circuit").

Plaintiff's Reply already highlights the point and cites SDNY authority confirming the Court's inherent power to manage its docket, including the discretion to lift or tailor stays where justice so requires. See *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 575, 578 (S.D.N.Y. 2001) (recognizing courts' inherent authority; "mere pendency of a criminal investigation standing alone does not require a stay").

In any event, the legal basis and factual posture of *G.G.* are materially different from the present case. First, the Government takes "no position" on Plaintiff's request to lift the stay; the core federal prosecutions and related investigations have effectively concluded; and there are no pending counts or investigations concerning Defendants Larkin (now his Estate) or other relevant Backpage defendants that would be impeded by civil discovery. Dkt. 31, "Mabie Decl. at ¶6. Further, the evidentiary record in this case is already well-developed through years of Backpage-related litigation and discovery in other cases, thus substantially reducing the need for discovery in this case and minimizing any risk of interference with the criminal case.

Second, In *G.G.*, plaintiffs expressly incorporated and quoted the Lacey indictment, and the court treated that incorporation as evidence of "core factual overlap" between the underlying criminal charges and the civil allegations against Salesforce (a third-party technology vendor), strengthening the "same occurrence" finding under § 1595(b)(1). This case is not a Salesforce vendor case and the Plaintiff's civil claims stand on their own. Plaintiff's claims, after years of criminal proceedings, do not rest on allegations that mirror or incorporate a still-live criminal investigation. "Even if the allegations in the complaint are sufficient only to state that [the Defendant] attempted to violate [predicates offenses] that, too, would be sufficient to support recovery." *N.S. v. Rockett,* No. 3:16-CV-2171-AC, 2018 WL 6920125, at *5 (D. Or. Oct. 19, 2018), report and recommendation adopted, No. 3:16-CV-2171-AC, 2018 WL 6920112 (D. Or. Nov. 28, 2018) (citing *Smith v. Husband*, 376 F. Supp. 2d 603, 611–12 (E.D. Va. 2005) (concluding that Congress had intended the statute to provide a remedy for victims even absent a criminal conviction); see also *Doe v. Liberatore*, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007) (adopting *Smith*'s Congressional findings); *Cisneros v. Aragon*, 485 F.3d 1226, 1232 (10th Cir. 2007) (citing *Smith* and "assum[ing] that a criminal conviction is not necessary for a defendant to face civil liability")).

The remedial civil statute "does not require a defendant to have been criminally convicted of the predicate offense." *E.M. v. Varsity Brands, LLC,* No. 2:22-CV-09410-ODW (ASX), 2024 WL 2808183, at *6 (C.D. Cal. May 31, 2024) citing *Rockett*, No. 3:16-CV-2171-AC, 2018 WL 6920125, at *5 (D. Or. Oct. 19, 2019). "It is enough that the civil claimant proves by a preponderance of the evidence that the defendant violated the enumerated statute." *Id.*, citing *Prewett v. Weems*, 749 F.3d 454, 458 (6th Cir. 2014))); *Doe v. Schneider*, 667 F. Supp. 2d 524, 529–30 (E.D. Pa. 2009) (requiring only that a proper predicate statute violation is alleged in the complaint, along with supporting facts). Moreover, here, the legal and factual determinations as to the Defendant's commission of violations of the criminal statutes on which Plaintiff's claims are predicated have been fully investigated. The defendants, the claims, and the procedural posture here are different than in Salesforce. Crucially, the criminal landscape has also significantly shifted since the parties agreed to a stipulated stay in 2020. This factual difference—that the underlying criminal predicate offenses are not in d—substantially diminishes *G.G.*'s persuasive value on whether a continued stay is either mandatory or appropriate on this record and in this case.

Third, as previously highlighted in Plaintiffs' prior pleadings, Sections 1595(b) and 3509(k) were designed to prioritize criminal prosecutions and protect child victims, not to create open-ended civil paralysis or serve as an indefinite shield for wrongdoers. The House Reports reflect that § 1595(b) was added to ensure DOJ could try criminal cases "unfettered by the complications of civil discovery," not to bar survivors from civil redress for years after relevant criminal matters have run their course and all relevant discovery has been gathered and or conducted. H.R. REP. 106-487 at 1 (1999). Put simply, the purpose and focus of the TVPRA are frustrated by maintaining a stay when the prosecution no longer needs protection, and the government takes no position, especially in this case, where the Plaintiff seeks to substitute the Estate of James Larkin under Rule 25(a) so the case can proceed, at least regarding party alignment and case management.

Finally, the decision in *G.G.* does not prohibit this Court from narrowly tailoring its lifting of the stay. For example, this Court may lift the stay for the limited purpose of substituting the Estate of James Larkin under Rule 25(a) and schedule limited motion practice that does not interfere with any completed or dormant criminal matters. Such an approach would align with the statutes' remedial purpose, and this Court's inherent authority, and it would prevent turning a once-sensible, temporary protection into a de facto, indefinite bar to Plaintiff's day in court. Nothing in *G.G.* restricts this Court's inherent discretion to lift the stay where it seems equitable and in the furtherance of justice.

Sincerely,

Margaret E Mabie

Margaret E. Mabie, Esq.